IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA        :

vs.                             :        CRIMINAL ACTION 07-00217-WS

BERNARDO RUEDA-BETANCOURTH      :

<u>REPORT AND RECOMMENDATION</u>

By Order dated September 24, 2007, this action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) to conduct an evidentiary hearing to determine the nature of Defendant's detention until he was arrested on the warrant issued in this case (Doc. 22).  This issue was raised in Defendant's Motion to Dismiss Indictment filed on September 4, 2007 (Doc. 16).  Because such a motion is specifically excepted from referral under § 636(b)(1)(A), the undersigned is submitting this report and recommendation pursuant to § 636(b)(1)(B).

Since the same issue has been raised in five other actions pending before two other District Judges in this Court, a consolidated evidentiary hearing was held on October 12, 2007[1].

_____

[1]The Motions to Dismiss Indictment were filed in <u>U.S. v. Rueda-Colindres</u>, No. 07-00215-KD; <u>U.S. v. Rueda-Betancourth</u>, No. 07-00217-WS; <u>U.S. v. Castillo-Morales</u>, No. 07-00218-CG; <u>U.S. v. v. Gutierrez</u>, No. 07-00219-WS; <u>U.S. v. Barahona</u>, No. 07-00221-KD; and <u>U.S. v. Alejandor-Miramar</u>, No. 07-00222-CG.  Assistant Federal Defender Fred Tiemann represents all six Defendants in these actions.

Present for the hearing were Defendant, Bernardo Rueda-Betancourth; counsel for Defendant, Assistant Federal Defender Fred Tiemann; Assistant U. S. Attorney Daryl Atchison for the Government; Spanish interpreter, Maria Papp; and the other five Defendants.  After consideration of Defendant's Motion to Dismiss Indictment (Doc. 16), the Government's Response in Opposition to Defendant's Motion to Dismiss Indictment (Doc. 20), Defendant's Reply to Government's Response to Motion to Dismiss (Doc. 21), the Joint Stipulation of Facts (Doc. 28), the arguments of counsel, and testimony and evidence presented at the evidentiary hearing, the undersigned finds that Defendant was in civil detention pending removal or deportation proceedings prior to the time that Defendant was arrested on the warrant in this action and recommends that the Motion to Dismiss Indictment be denied.

<u>FINDINGS OF FACT</u>

The Court finds the facts to be as follows:

1.  Sheila Richerson, Senior Special Agent with the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE"), testified at the hearing concerning all six Defendants.  She is the assigned case agent for Rueda-Colindres, Rueda-Betancourth, Castillo-Morales, and Gutierrez, all of whom were taken into custody at the Shell Chemical facility on July 23, 2007; she assisted in the administrative removal processing as to Barahona and Alejandro-Miramar, who were

taken into custody at the same facility on July 19, 2007.  As
part of their duties, ICE Special Agents respond to calls about
people suspected of being illegally in the United States.  If,
through interview and/or a records check, it is determined that
the person is illegally in this country, he or she is taken into
administrative custody and transported to the ICE office to
complete the paperwork initiating the civil administrative
removal or deportation proceedings.[2]  The "catch and release"
policy whereby some illegal aliens were released upon initial
apprehension was abandoned or revoked in 2006--all illegal aliens
are initially detained and go through administrative removal
proceedings to return them to their home country.

   2.  In responding to information about suspected illegal
aliens, ICE Special Agents also ascertain whether federal
criminal laws have been violated.  If so, the United States
Attorney's Office is contacted to see if the action will be
accepted for prosecution.  Once authorized, the criminal
investigation and prosecution proceeds, many times at the same
time as the civil administrative removal or deportation
proceedings.

   3.  Once the removal or deportation paperwork has been
completed, the illegal aliens are turned over to the Detention

---

   [2]Many Immigration and Naturalization Service ("INS")
documents and forms are still used since ICE was created in 2003
through the merger of INS and United States Customs.

3

and Removal Office ("DRO"), a separate department of the
Department of Homeland Security.  DRO maintains civil custody of
the illegal aliens until they are presented to an immigration
judge.  DRO is not a part of ICE and once a person is in DRO
custody, ICE has no further control over that person and cannot
stop or delay the removal proceedings.  DRO handles only civil
detentions, not criminal detentions.  ICE agents can and do
notify DRO that a person will be charged criminally, but it is
only a request that the person be kept in the District and it
does not delay the deportation proceedings.[3]

4.  On Monday, July 23, 2007, Defendant entered the Shell
Chemical plant in Saraland, Alabama, as an employee of Nicholas
Insulation, a subcontractor doing work at the plant.

5.  As a Department of Homeland Security-designated
"critical infrastructure facility," Shell requires that all
persons who seek entrance to the plant provide identifying
information in advance, including a Social Security number.  Such
persons must then undergo an employee orientation before
receiving identification cards and permission to work at the
plant.

---

[3]The Court notes that two of the four Defendants taken into
custody at the Shell plant on July 23, 2007, were not immediately
available for their initial appearance and arraignment set for
August 15, 2007, because DRO had transferred them out of
District--Rueda-Betancourth to Waterpoof, Louisiana, and
Gutierrez to Mason, Tennessee.

6.  After Shell personnel ran a background check on
Defendant and reviewed the documentation submitted, they believed
that Defendant had utilized a false Social Security number to
gain access to the plant.  Shell contacted ICE and explained the
situation.

7.  On July 23, 2007, Richerson and other agents went to the
Shell Chemical plant in response to Shell's call.  Defendant
admitted to being illegally in this country, was administratively
arrested and taken to the Border Patrol Office for removal or
deportation processing, which involves the taking of fingerprints
and photographs and completion of the removal paperwork.
Computer queries that same day confirmed that Defendant was an
illegal alien from Honduras, subject to deportation and
Defendant's prior deportation order was reinstated (see Notice to
Appear dated February 17, 1999, and Record of Deportable/Inad-
missible Alien dated July 23, 2007, at Doc. 32).  Defendant was
then released that same day to the civil custody of DRO and
transported to the Perry County Correctional Center to await
further removal proceedings.

8.  Richerson also contacted the United States Attorney's
Office on July 23, 2007, to discuss possible violations of
federal law and AUSA Sigler authorized presentment of this action
to the grand jury.  A Report of Investigation was prepared on
July 24, 2007, in which it is stated that "five employees were

apprehended ... for violation of 42 USC 408(a)(7)(B) Social
Security fraud" (Doc. 21-2), and Defendant was indicted on July
26, 2007, for a violation of 42 U.S.C. § 408(a)(7)(B)(false use
of a Social Security number)(Doc. 1).   An arrest warrant was
issued on July 30, 2007 (Doc. 6), and Defendant was arrested on
the present criminal charge on August 22, 2007, the same date as
Defendant's initial appearance and arraignment (Docs. 12, 13,
15).

    9.  Based on the evidence and testimony set out above, the
undersigned finds that the nature of Defendant's detention was
civil from July 23, 2007, until Defendant was arrested on the
present criminal charge on August 22, 2007, and that the primary
purpose for this civil detention was to facilitate the
deportation process.

<u>CONCLUSIONS OF LAW</u>

    The parties agree that the applicable law on the issue
presented is set out in <u>United States v. Noel</u>, 231 F.3d 833 (11th
Cir. 2000), <u>cert</u>. <u>denied</u>, 531 U.S. 1200 (2001).   In <u>Noel</u>, an
illegal alien was detained by the INS on March 7, 1999, and he
was subsequently indicted on April 15, 1999, on a charge of
illegal reentry after deportation.   <u>Noel</u>, 231 F.3d at 836.   He
was arrested on the federal charge one week later.   <u>Id</u>.
Addressing a question of first impression, the Eleventh Circuit
held that the defendant's 39-day administrative detention did not

trigger the Speedy Trial Act.  <u>Id</u>.  In a rationale directly on
point in this action, the <u>Noel</u> Court reasoned that the Speedy
Trial Act was not triggered until the defendant was arrested on
federal charges.  <u>Id</u>., <u>citing</u> <u>United States v. Reme</u>, 738 F.2d
1156, 1162 (11th Cir. 1984) (although defendant was detained by
INS on October 21, the Speedy Trial Act was not triggered until
the following July when defendant was served by the U. S. Marshal
with a warrant issued pursuant to the indictment).

    <u>Noel</u> additionally states that

> [a]lthough routine INS detentions incident to
> deportation do not trigger the Speedy Trial
> Act, a contrary result may be warranted when
> detentions are used by the government, not to
> effectuate deportation, but rather as "mere
> ruses to detain a defendant for later
> criminal prosecution."  <u>U.S. v. Cepeda-Luna</u>,
> 989 F.2d 353, 357 (9th Cir. 1993); <u>see also</u>
> <u>U.S. v. De La Pena-Juarez</u>, 214 F.3d 594, 598-
> 99 (5th Cir. 2000) (applying same exception).
> We agree with the Fifth Circuit's recent
> decision that this exception will provide
> Protection for detained aliens, but that the
> exception should only be applied when "the
> defendant demonstrates that the primary or
> exclusive purpose of the civil detention was
> to hold him for future criminal prosecution."
> <u>De La Pena-Juarez</u>, 214 F.3d at 598.

<u>Noel</u>, 231 F.3d at 836.

    The <u>Noel</u> Court further found that the defendant's indictment
did not violate Federal Rule of Criminal Procedure 5(a), as
alleged in the pending motion before this Court.  "Detentions
attendant to deportation proceedings are civil in nature; they do

not implicate Rule 5(a), which only governs criminal arrests."
<u>Noel</u>, 231 F.3d at 837 (citations omitted).  Finally, the <u>Noel</u>
Court also held that the defendant's indictment did not violate
his due process rights under the Fifth Amendment.  "Deportation
detentions do not serve to punish those detained, but merely to
facilitate the deportation process."  <u>Id</u>.  The Court found that
the 39-day detention before indictment served no purpose other
than to facilitate his deportation.  <u>See also</u> <u>United States v.</u>
<u>Drummond</u>, 240 F.3d 1333 (11th Cir. 2001) (affirming denial of
motion to dismiss indictment:  "administrative hold" for illegal
reentry after deportation did not trigger Speedy Trial Act; Act
only began to run when defendant was arrested on subsequent
federal indictment for illegal reentry).

Defendant argues that Defendant was criminally arrested
and/or charged with a federal criminal offense on July 23, 2007,
thereby triggering the requirements of Rule 5(a) and Fourth and
Fifth Amendment constitutional rights because (1) SA Richerson
discussed the prosecution and presentment of this action to the
grand jury with an AUSA that same day; (2) it was decided that it
would be presented to the grand jury; (3) a report of the
criminal investigation was prepared stating that Defendant was
apprehended for violation of federal criminal law; and (4)
Defendant was detained at the Perry County Correctional Center
which is used for both civil and criminal detentions.  However,

no law was cited to support this contention that such preliminary criminal investigative actions and/or decisions by the Special Agent and the prosecutor constitute a criminal charge or arrest. Defendant makes no claim that his Speedy Trial Act rights were violated.

Noel clearly states that civil detentions such as occurred in this action do not implicate Rule 5(a), which governs only criminal arrests, nor interfere with Defendant's constitutional rights.  The actions taken by the case agent and prosecutor, including the statement in the report of the criminal investigation that Defendant was apprehended for a violation of federal law, do not convert the initial civil detention into a criminal arrest.  It is also clear from Noel and the other cases cited therein that a civil deportation proceeding and criminal prosecution may proceed at the same time and/or overlap at times without converting the civil detention into a criminal arrest.

Defendant's final claim is that his arrest or detention was a mere ruse to hold him for criminal prosecution.  No evidence or argument was specifically presented on this claim, especially that the primary or exclusive purpose of the civil detention was to hold Defendant for future criminal prosecution.  In any event, it is clear from the evidence that Defendant's initial civil detention incident to the deportation proceedings was not a ruse

and that Defendant would have been detained awaiting removal even if the federal criminal charge had not been brought.

Therefore, for the reasons set out above, it is recommended that the Motion to Dismiss Indictment be denied.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  **<u>Objection</u>**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a <u>de novo</u> determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982)(<u>en banc</u>).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed <u>de novo</u> and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 30th day of October, 2007.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

11